## T. B. Bishop *vs.* Globe Company.

Suffolk.   March 22. — May 7, 1883.   Devens & W. Allen, JJ., absent.

If, by the law of the State under which a corporation is organized, the corporation has a lien on the stock of any shareholder for a debt due from him to the corporation, such lien is a good defence to an action in another State against the corporation by a person to whom the shareholder has transferred the stock.

If the by-laws of a corporation require a transfer of stock to be under seal, a transfer signed in blank by the stockholder, with the word "seal" enclosed in brackets is of no effect.

If a corporation has a lien on stock for a debt due the corporation from a stockholder, it is not estopped to assert such lien by the fact, that, on the stockholder's presenting the certificate for transfer to the person in charge of the transfer-book, the latter promised to make the transfer and issue a new certificate as soon as a certain officer returned.

Tort in two counts.   The first count alleged that the defendant converted to its own use a certificate of forty shares of its capital stock, the property of the plaintiff.   The second count alleged that the plaintiff was lawfully in possession and the owner of a certificate of forty shares of the capital stock of the defendant corporation, issued to one Wilkins; that the plaintiff in the course of business presented said certificate at the

office of the defendant, with a duly executed assignment to the plaintiff of said forty shares of stock by Wilkins indorsed thereon, and then and there surrendered said certificate to the defendant for the purpose of having the same duly transferred to the plaintiff upon the books of the defendant, in accordance with its by-laws, and demanded that said stock be then and there so transferred and said certificate cancelled and new certificates of one share each be issued to the plaintiff in lieu thereof; and that the defendant, by its agents and servants, retained said certificate and refused to permit said transfer to be made, and had ever since continued to withhold said certificates and shares from the plaintiff. The answer contained a general denial, and alleged that the defendant is a corporation organized under the laws of the State of Connecticut; that it issued to B. Wilkins the certificate and shares of stock mentioned in the plaintiff's declaration under the following agreement, to wit, that Wilkins should at his option within a reasonable time surrender said certificate to the defendant, or retain the same on paying to the defendant the sum of $1000; that neither Wilkins, nor any person on his behalf, had ever paid or tendered to the defendant said sum of $1000, or any sum whatever, or surrendered said certificate to the defendant, although a reasonable time had elapsed between the issue of said stock and the time when said certificate was presented to the defendant by the plaintiff for transfer, and no consideration had ever been paid to the defendant for said certificate and shares, by reason whereof, and by virtue of the laws of the State of Connecticut, the defendant had at the time of said presentation a lien on said certificate and shares for said sum of $1000; and that the defendant had a right to retain said certificate.

Trial in the Superior Court, before *Gardner*, J., who reported the case for the determination of this court, in substance as follows:

The plaintiff testified that he was a stockbroker in Boston; that on May 27, 1881, he bought forty shares of the defendant's capital stock of one Wilkins, and that, at the same time, Wilkins delivered to him a certificate of forty shares of said stock, with a writing on the back of said certificate, of which the following is a copy:

" For value received I hereby sell, assign, and transfer to              shares of within' mentioned stock, and do hereby constitute and appoint              attorney to transfer the same on the books as within mentioned              .

" Witness              hand and seal this              day of May 24th, A. D. 1881.

" [Seal]    (*sic.*)                                        B. Wilkins.

" Witness, J. Cheever Goodwin."

The plaintiff further testified that he took the certificate with the above writing thereon to the office of the defendant, and presented it to a person in charge of the certificate-book, with the request that forty certificates of one share each be issued to the plaintiff in lieu of said certificate; that the person in charge of the certificate-book replied that he would have the certificates made out as soon as an officer, whose signature was necessary, and who was temporarily absent, should return, which would be in an hour or so; that the plaintiff thereupon went away and sold some of the stock of the defendant corporation; that, no certificates having been sent to the plaintiff in the course of the day, the plaintiff sent for them the next morning, when they were refused; that he then went to the defendant's office, and was told by the defendant's president that the shares in question had been issued to Wilkins without consideration, that the defendant claimed a lien upon them for their full par value, $1000, which Wilkins had agreed to pay therefor or else return the stock, and that no transfer of said stock on the defendant's books would be permitted; and that the plaintiff then demanded that the certificate be returned to him, and his demand was refused.

On cross-examination, the plaintiff testified that he made no complaint to Wilkins, after the refusal to transfer the stock, nor any attempt to settle with him; that he did not remember whether he had ever paid Wilkins any cash; and that he did not think he had ever given Wilkins any note or other obligation for the stock.

A. B. Currier testified for the defendant, under the plaintiff's exception, that he was its treasurer in 1880; that on July 7, 1880, certificate No. 254, for ten shares of the par value of $100 each, was issued by the corporation to Wilkins, and that he gave

for the same to the defendant the following writing: "$1000. Boston, July 7, 1880. On demand, after date, I promise to pay to the order of myself one thousand dollars at the office of The Globe Company. Value received with interest. B. Wilkins." On the back of the same was the following memorandum: " This note to be surrendered on presentation of certificate No. 254 of Globe Co.'s stock. Allen B. Currier, Treas."

Currier further testified that the issue of said certificate and said writing and memorandum were all made at the same time, and Wilkins promised the defendant, at the same time, that he would either return the certificate or pay the note (meaning the above-mentioned writing) ; that certificate No. 506 was issued in consequence of a change having been made in the capital stock reducing the par value of the shares from $100 to $25; that the only consideration for certificate No. 506 was certificate No. 254; and that Wilkins never paid anything to the defendant on account of said writing or note during the time when Currier was treasurer, and never paid anything for either of said certificates, except that he surrendered certificate No. 254 for certificate No. 506. On cross-examination, Currier testified that he had asked Wilkins several times to return the certificate and get his note, and that Wilkins had promised to do so.

H. P. Stevens testified, under the plaintiff's exception, that he succeeded Currier as treasurer of the defendant corporation in December, 1881; and that no payment had been made on account of said note or certificate during his term of office.

The statute of Connecticut of 1880, *c.* 97, § 16, was offered in evidence, and was as follows: " The stock of every joint stock corporation shall be transferred only on its books in such form as the by-laws shall prescribe, and the corporation shall have a lien upon all the stock owned by any person therein for all debts due to it from him; and any corporation desiring to enforce such lien may give notice to such stockholder that unless he shall pay his indebtedness to said corporation within three months it will sell his stock, and such corporation may prescribe by their by-laws the manner of giving the notice required by this section."

The following by-law of the defendant was also put in evidence: " Article XV. Stock. All blank certificates of stock

of this company shall be bound in a book and numbered, and each certificate shall have a margin which shall remain in the book and on which shall be entered by the secretary the number of each certificate issued, the date of issue, number of shares, which shall be signed by the person to whom it is issued, or his or her attorney, and any such attorney may transfer such stock and hold it in trust for any party, but such transfer must be made upon the back of the stock under seal (in case of death by their legal representatives). No new certificate shall be issued unless duly assigned and witnessed under seal."

This was the only by-law of the defendant relating to transfers of stock, or prescribing how stock should be transferred on the books of the corporation, and there was no by-law prescribing the notice of sale mentioned in the preceding statute, or in any way relating to liens on, or sales of, stock by the corporation for debts due to it from stockholders.

It also appeared in evidence that the defendant kept no transfer-book whatever, and no record of transfers, except only on the stubs of the certificate-book from which the certificates were cut when issued, a memorandum of the number of certificates, to whom issued, date, number of shares, and reference to old certificate, being made on the stubs ; that, when stock was transferred, the old certificate with the transfer indorsed on the back thereof was attached to the stub from which it had been cut, marked " cancelled " across its face, and a reference then made upon the stub to the new certificate or certificates issued instead thereof; that the defendant's office and place of business was in Boston at the time of all the transactions relating to this case, and that all its records and books were kept in said office.

Upon this evidence, the judge ruled that the plaintiff. was not entitled to recover; and directed the jury to return a verdict for the defendant.

*S. L. Powers & J. W. Pickering*, for the plaintiff.

*C. P. Greenough & F. C. Lowell*, for the defendant.

COLBURN, J. The defendant is a corporation organized under the laws of the State of Connecticut, and the rights and obligations of its stockholders, as between themselves and the corporation, are to be determined by the laws of that State. *Hutchins* v. *New England Coal Mining Co.* 4 Allen, 580. *Halsey* v. *McLean,*

12 Allen, 438. The statute of Connecticut, which was put in evidence, provides that "the stock of every joint stock corporation shall be transferred only on its books in such form as the by-laws shall prescribe, and the corporation shall have a lien upon all the stock owned by any person therein for all debts due to it from him," and provides for the enforcement of the lien.

Wilkins was indebted to the defendant in the sum of $1000, which appears to have been the full value of the stock. He may have had the right to cancel the indebtedness by returning the stock, but if he retained it, as it appears by his attempt to sell it he designed to, his indebtedness continued. The defendant had a statutory lien upon the stock, to the full amount of Wilkins's indebtedness, and the plaintiff took the stock subject to that lien. He must be presumed to have known the public laws of Connecticut under which the corporation existed and the stock was held. *Hartford Bank* v. *Hartford Ins. Co.* 45 Conn. 22.

The plaintiff had no better title to the stock than Wilkins. He could have no legal title to it until it was transferred to him on the books of the defendant. Indeed, it does not appear that he was a *bona fide* purchaser. He does not appear to have paid, or promised to pay, anything for the stock; and if he sold any of it, it does not appear how much, or for what price, or whether he incurred any obligation by such sale; and it does appear that he made no complaint to Wilkins after the defendant refused to allow the stock to be transferred, and asserted its lien upon it.

If there had been no lien on the stock, the plaintiff was not legally entitled to demand a transfer. The blanks in the instrument of transfer for the name of the transferee, the number of shares to be transferred, and the name of the attorney, have not been filled, and the instrument was not under seal, as required by the by-laws of the defendant. As we understand from the report, only the word "Seal," between brackets, was written or printed on the instrument, and this was not a seal. *Bates* v. *Boston & New York Central Railroad,* 10 Allen, 251.

The defendant is not estopped to assert its lien by what was said by the person in charge of the transfer-book, when the plaintiff presented the certificate and requested a transfer. It

does not appear that this person had any authority except to receive requests and to communicate with the proper officers, or that he had any knowledge of Wilkins's indebtedness. As soon as the matter was brought to the attention of the president of the company, the lien was asserted and the transfer refused.

The testimony of Currier and Stevens was properly admitted.

The defendant, having a lien upon the stock for its full value, with a right to enforce its lien by sale of the stock, unless Wilkins surrendered it and cancelled his indebtedness, had a right to retain the certificate until the matter was adjusted. The certificate was worthless for any legitimate purpose either to the plaintiff or Wilkins.                              *Judgment on the verdict.*