No. 14,087.

STATE EX REL. J. B. WATKINS VS. NORTH AMERICAN LAND AND TIMBER COMPANY, LIMITED.

SYLLABUS

1. A foreign corporation, not engaged in commerce, or in the service of the United States, can, lawfully, do business in Louisiana only upon the conditions imposed by the law of the State.

2. Where such corporation has so far complied with the law as to establish an office in this State and designate an agent upon whom process may be served, service upon such agent vests the court issuing the same with jurisdiction to hear and determine the cause, irrespective of the citizenship of the plaintiff or the subject matter of the controversy.

3. But, complete jurisdiction includes, not only the power to hear and determine, but the power to enforce the determination, and as courts are averse to the exercise of authority which they are unable to vindicate by process, they will, usually, decline to exercise a jurisdiction, intended to be complete, which falls short in the latter respect.

4. Hence, the courts of a State will not, ordinarily, entertain suits involving the exercise of visitorial power over foreign corporations, nor will they, ordinarily, undertake to regulate the internal management of such corporations ; but, this rule is subject to the same exceptions as the necessity upon which it is founded, and where, in a particular case, a court acquires complete jurisdiction, and is able, not only to hear and determine, but to enforce the determination in such a manner as to do complete justice, the

jurisdiction will be exercised, although the result may be the regulation of the internal affairs of a foreign corporation.

5. Where a foreign corporation doing business here, fails to keep within this State the books required by the Constitution, and there is no officer of such corporation, having the custody or control of such books, within reach of the process of the State courts, *mandamus* will not issue commanding that inspection thereof be allowed, but where there are other books, within the State, and in the custody of an agent of such corporation who is within reach of the process of the State courts, *mandamus* may issue commanding that such inspection be allowed, to a stockholder, whether resident or non-resident.

6. Nor will such relief be denied because of a provision, in the charter, or by laws, of the corporation, to the effect that differences thereafter arising between the corporation and its members shall be submitted to arbitration, such stipulations whereby persons undertake to shut the doors of the courts with regard to matters to arise in the future not being enforceable.

APPEAL from the Fifteenth Judicial District, Parish of Calcasieu. —*Miller, J.*

*Thomas T. Taylor* and *Cline & Cline,* for Relator, Appellant.

*Pujo & Moss,* for Respondent, Appellee.

## STATEMENT OF THE CASE.

The opinion of the court was delivered by

MONROE, J. The relator, claiming as a stockholder, seeks to enforce, by *mandamus,* his right to inspect the books of the defendant corporation. To the proceeding, originally filed, an exception was interposed to the effect that it was directed against the manager of the company, alone, and that there had been no prayer for citation and no citation of the company, and, upon appeal to this court, the exception was maintained, and the case remanded for "amendment of the application * * * and in order that legal service may" (might) "be made of the order or writ calling the defendant into court," the costs of the appeal to be paid by the relator and those of the lower court to await final judgment.

State *ex rel.* Watkins vs. North American Land & T. Co., 22 S. 910.

Thereafter the original petition was amended, and both petitions, taken together, allege in substance:

That relator resides in the State of Kansas, and that respondent is an English corporation, here represented by Arthur V. Eastman,

who has been designated, agreeably to the law of this State, as the person upon whom process may be served, and who has established, at Lake Charles, in the Parish of Calcasieu, an office in which is kept "all the books of account, of sales of land, and all other transactions of said company, and all other books of every description and all accounts necessary to be kept for the information of said company, its stockholders and directors, and for the proper conduct and management of its business in this State;" that the relator is the owner of stock in said company of the par value of about $190,000, but, by reason of a ·abal between the stockholders and directors in England is deprived of all voice, management and control in the direction of its affairs; and that, in order that he may be informed of its present condition and past transactions, and may so exercise his rights as to prevent mismanagement, correct abuses, extravagance and waste and protect himself from irreparable loss and injury, it is necessary that he should be allowed to inspect all the books, accounts, papers and correspondence of said company, and that application to that effect was made by his duly authorized agent and denied by the representative of the company. Wherefore relator prays the court to order the issuance of an alternative writ of mandamus, commanding the said North American Land and Timber Company, Limited, to appear and show cause why the relator should not be permitted to examine and inspect the record of the amount of capital stock subscribed and of transfers thereof, the names of the owners of stock, the amounts owned by them, respectively, the amount of stock paid and by whom, the amount of its assets and liabilities. together with all other books, papers, letters received and copies of answers thereto kept, used, received, sent and exchanged in the transaction of business by said respondent company," etc.

To this petition and the order to show cause made thereon the company excepts and pleads as follows:

"That respondent has not in its posssession in its office at Lake Charles any of the books enumerated in Article 273 of the Constitution of 1898, or in relator's application. but that such books and all its other corporate records are kept in its office at London, England, the legal domicile created by the charter to which relator was one of the original subscribers; that the contract existing between relator and respondent by reason of relator's being a stockholder in said company was entered into in England, a foreign country; that relator is

also a non-resident of the State of Louisiana, for which reason your Honorable court has no visitorial power of the organization of respondent company, its corporate functions, by-laws, or over the relations existing between respondent and its members and their respective rights and obligations arising under the law of said company's creation, for which cause your said Honorable Court is without jurisdiction of the subject-matter of the suit, and the remedy sought is beyond the reach of the court and not within the sovereign power of the State from which this court has its authority; * * * that Act 149 of 1890 does not subject the company to the jurisdiction of this court for any cause of action, but merely requires the appointment of an agent upon whom service of process can be made, or, in other words, it was not the intention of said act to give the court jurisdiction over causes of action accruing out of the State against a corporation created and existing beyond the limits of the State, and your Honorable court is without jurisdiction' *ratione materiae,* unless the cause of action existed against the company independently of the mere fact of its being represented by an agent within the State."

Reserving the benefit of this exception, the respondent further pleads, in substance:

That since the filing of the original petition herein and the judgment thereon the relator, through the instrumentality of a receiver, appointed by the Circuit Court of the United States for the Western District of Louisiana, and through an expert, acting as his agent, obtained possession of all the books kept at its office in Lake Charles, inspected the same and made copious extracts and memoranda therefrom, and is not entitled to further investigation, and that the present application is made for no other purpose than to harass and annoy this respondent.

That respondent was organized in 1882, under the law of England, and that relator was one of its organizers and signers of its charter. That Article 126 of said charter provides that "the directors shall, from time to time, determine whether or to what extent and at what time and place and under what condition and regulations the accounts and books of the company, or any of them, shall be open to the inspection of the members, and no member shall have the right of inspecting any account or book or document of the company except as conferred by statute or authorized by the directors or by resolution of the company in general meeting." That relator does not allege that he has

been granted the right claimed by statute or otherwise, as contemplated by said article, the provisions of which are binding upon him as a matter of contract.

That Article 147 of said charter provides that "If any dispute shall arise between the company and any of its members or any of the officers, directors or creditors, as such, touching any matter within the purview of these presents, the matter in dispute or difference shall be submitted for final decision to two arbitrators or their umpire, pursuant in all respects to the provisions in that behalf of the Common Law Procedure Act of 1854 or any then existing statutory modification thereof, and this article shall be deemed to be a submission by all the parties above referred to to arbitration, and may be made by any of the parties a rule of any division of the high court of justice; and the award of such arbitrators or their umpire shall be absolutely binding on all of said parties." And that the relator is bound thereby with respect to the matters involved in this proceeding.

And, reserving the benefit of said plea, respondent denies generally the allegations of relator's petition and avers that the only books in its possession in this State are such as are necessary to be kept by its agent, Austin V. Eastman, and that such books are not, in the eye of the law, corporate books and records, all of which latter are kept at its home office in London.

It appears from the evidence that the repondent company was organized in England in 1882, under the authority of certain acts of the British Parliament, and that the "Memorandum of Association," as also what are called "Articles of Association," constituting, together, its charter, were signed by the relator, with other subscribers. The declared purposes for which the company is established are multifarious, including the buying and selling of lands in the United States of America, or elsewhere," the idea conveyed being that whilst operations may be conducted elsewhere, this country was the field immediately in view. The capital stock of the company was fixed at 500.000 pounds and subsequently reduced to 350,000 pounds, of which the relator appears to be the owner of 28¼%. Shortly after its establishment the company appointed the relator its agent and general representative in this country, and he held that position until 1896, when the present incumbent was appointed in his stead. In the meanwhile, though vast tracts of land had been purchased, and the company was registered as doing business and as having an office and an agent upon

whom process might be served in this State, such of its books as are particularly specified in relator's petition have been kept in England and have never been brought within the State of Louisiana. Being asked his reason for wishing to inspect said books, relator, testifying as a witness in his own behalf, said: "I desire to inspect the books to see which land of the North American Land and Timber Company has been sold, and at what price it was sold, and upon what terms of payment. I have received the impression, from common report, that a very large portion of the land of the company that is susceptible of cultivation has been sold. * * * I want to inform myself of the exact situation, because I understand several hundred thousand dollars' worth of land has been sold during the last four or five years, and during all of this time I have been paid, in dividends upon my stock, only two and one-half per cent. I want to ascertain, if possible, where this money is that has been received for land. On the day I arrived in Lake Charles I was informed and read in the newspapers that this Mr. Eastman had sold more than one hundred thousand acres of land, and when inquiry was made of him as to the terms and conditions of that sale, his answer was: "I have no information to give out." I want to know upon what terms and conditions that hundred thousand acres of land was sold, because my interest in that land amounts to twenty-eight and one-quarter per cent." After the case was remanded by this court, in May of the present year, a receiver was appointed to the respondent company by the Circuit Court of the United States, and, during his administration, which lasted until the decree appointing him was reversed on appeal, he afforded access to the books which had come into his possession to an agent whom the relator had selected to examine them and who reported the result of his examination to his principal. This was not done with the consent of the respondent, however, and the question of the right of the relator to make such examination remains to be determined, and has been and is persistently denied.

## OPINION.

As the repondent corporation is a mere creation of foreign law and is engaged neither in commerce nor in the service of the Federal government, it was within the power of the State of Louisiana to exclude it from her territory, or to admit it upon such conditions, reasonable or unreasonable, as she thought proper to impose. In the

absence of special legislation, the respondent was at liberty to enter the State for the purposes of its business, as a matter of comity, and subject to no other conditions than that it would conform to the public policy of the State as declared in her general law and the decisions of her courts. But the State having imposed certain conditions by both her fundamental and statute law, the respondent must be presumed to have accepted and did in part specifically accept them when it engaged in business within her territory, and is bound by them accordingly. Articles 245 of the Constitution of 1879 and 273 of the Constitution of 1898, respectively, provided, and now provides, that "Every corporation organized or *doing business* in this State * * * shall have and maintain a public office or place in this State for the transaction of its business where transfers of stock shall be made and where shall be kept, for public inspection, books in which shall be recorded the amount of the capital stock subscribed, the names of the owners of stock, the amounts owned by them, respectively, with the date of transfer, the amount of its assets and liabilities, and the names and places of residence of its officers."

Arti cles 236 of the Constitution of 1879 and 264 of the present Constitution, respectively, provided, and now provides, that "No * * * foreign corporation shall do any business in this State without having one or more known places of business and an authorized agent or agents in this State upon whom process may be served."

Article 245 of the Constitution of 1879 has been held to require no legislative action to give it effect. State *ex rel.* Bourdette vs. Gas Light Co.. 49th Ann. 1559.

Act 149 of 1890, entitled "An act to carry into effect Article 236 of the Constitution of 1879," reads: "Section 1. * * * That it shall be the duty of all corporations domiciled out of the State, doing business in this State, excepting mercantile corporations, to file in the office of the Secretary of State a declaration of the place or locality of its domicile, together with the name of its agent or officer in the State representing said corporation, upon whom service of process may be made. Section 2. * * * Whenever any such corporation shall do any business of any nature whatsoever in this State without having complied with the requirements of Section 1 of this act, it may be sued upon any cause of action in the parish where the right or cause of action arose, and service of process may be made upon the person or persons, firm or company transacting such business for such corpora-

tion, and each person or persons, firm or corporation shall be deemed the agent of the corporation upon whom service can be made."

The respondent has accepted and has complied with the conditions thus imposed in that it has maintained an office in this State and has designated a person upon whom process may be served, but it has not complied with them in that it has failed to keep in such office the books required to be kept there, and it claims that service of process upon the agent whom it has designated to receive the same confers upon the courts issuing such process jurisdiction only in a certain class of cases.

Whether we assume that laws are enacted exclusively in the interest and for the protection of the people who enact and are to be governed by them or that they are also intended in a spirit of interstate and international comity, to prevent the territory throughout which they may be enforced from being used as a field of operations for the infliction of injury upon others, no good reason suggests itself why foreign corporations, establishing permanent agencies in a State, should not be required to furnish the same facilities for the obtention of information as to their status and for the obtention of legal redress as the corporations established by such State. And it was probably because it was thought that no such reason exists that the framers of the last preceding and present constitutions of Louisiana, the one adopted after nearly twenty years' experience of the other, incorporated in these instruments the articles which have been quoted, and which apply in identical terms to both foreign and domestic corporations. It will be observed that the requirement upon the subject of books does not demand original books of entry, save such as are necessary in transferring stock, but merely exacts that "books" containing certain information shall be kept in the office of every corporation organized or *doing business* in this State, and that such books shall be open for public inspection. If the corporation is organized here, its original books will, of course, meet the requirement. If it is organized elsewhere and is doing business here, the requirement may be complied with by its keeping books containing the necessary information obtained from the original books at the home office, through the mails, or otherwise. It may be considered settled jurisprudence in this State that such books are not open to the inspection of persons without interest, or to the unreasonable inspection of persons who are interested; but, whatever may be the method adopted for that purpose, the

State ex rel. Watkins vs. Land and Timber Company, Limited.

books must be kept as required, or the business of the corporation is illegally conducted. When, therefore, the respondent avers and shows that it has been engaged in business in Louisiana for more than seventeen years, but that the books required by the Constitution of the State to be kept in its office have never been and are not now so kept, it avers and shows that for more than seventeen years it has conducted and is now conducting such business in violation of our fundamental law. What the penalty may be, and at whose instance, and in what manner it may be enforced need not now be considered.

The plea to jurisdiction is based on the proposition that the constitutional and statutory law which has been quoted was intended to confer upon the State courts jurisdiction only in suits brought by citizens of Louisiana against foreign corporations engaged in business here upon contracts entered into or causes of action arising in this State, and that service of process on the agents of such corporations, designated in compliance with that law, should not be held to confer jurisdiction in other suits, and without regard to the citizenship of the plaintiffs or the subject-matter or place of origin of the controversies. Proceeding to the consideration of this proposition, we find nothing in the law in question to warrant the conclusion that it was the intention to discriminate in favor of the citizens of Louisiana in the matter of bringing suits against foreign corporations, the discrimination made by the second section of the statute relating only to the place of origin of the right or cause of action, and operating as favorably to citizens of other States and countries as to citizens of this State. If, therefore, the present action would lie in favor of a citizen of Louisiana, it will lie in favor of the non-resident relator; and all the more is this true if the relator is a citizen of the State of Kansas, since the Constitution of the United States in such case secures to him, in Louisiana, all the rights, privileges and immunities which the State of Louisiana accords to her own citizens. Nor do we find anything in that law whereby the jurisdiction acquired by service of process upon an agent authorized by a foreign corporation to receive the same is limited to any particular class of cases.

The present doctrine upon that subject is thus stated by a recent writer: "In all the States statutory methods are now provided for the service of process upon foreign corporations which are doing business in the State. Where a corporation accedes to such provisions, as to service, and accepts them as a condition upon which it may do

business in the State, the court acquires complete and perfect jurisdiction over it, and may render a judgment *in personam* against it, and such a judgment is entitled to full faith and credit in other jurisdictions."

Elliott on Private Corporations, 2nd Ed., p. 201.

This doctrine has long been approved in Massachusetts, where it has been held that "a non-resident may sue a foreign insurance company, which does business in that State, on a contract made in another State, where the subject-matter of the contract is also situated, although the only service made is on the insurance commissioner whom all foreign insurance companies are required to appoint as their attorney for the service of process." Taylor on Private Corporations, 392; *citing* Johnson vs. Trade Ins. Co., 132 Mass. 432; Wilson vs. Fire Alarm Co., 149 Mass. 24.

The English courts have gone further and now hold that where a foreign corporation establishes a permanent branch agency in England it may be sued through the agent in charge of such branch in the same manner as domestic corporation, whether the agent is specially authorized to accept citation or not. And Morawetz says upon this subject: "However, if a corporation open an office or habitually transacts business in a foreign State, the head officer there must be deemed an agent of the company for the purpose of receiving service of process, and, under these circumstances, service upon the officer is binding upon the company itself." Private Corporations, Morawetz (1st Ed.), 523; *citing* Newby vs. Von Oppen & Colts Patent Firearms Mfg. Co., L. R. 7 Q. B. 293, 296. see, also, Commentaries on Law of Corp's, Thomson, Vol. 6, Par. 7990.

The Court of Appeals of New York, sustaining the provisions of the Code of Civil Procedure to that effect, has gone still further, and holds that a citizen of that State may sue a foreign corporation upon *any* cause of action, no matter where originating and no matter whether the corporation has engaged in business or has appointed an agent to receive service of process in the State or not, service upon one of its officers. found within the State, whether there upon his own business or otherwise. being considered sufficient to bring the corporation into court, provided the service upon such officer would have been sufficient at the domicile of the corporation. Pope vs. Mfg. Co., 87 N. Y. 137.

It is not necessary, nor would we be disposed to adopt the extreme

view last above referred to. On the contrary, we might hold that the jurisdiction acquired by service of process on respondent's agent in this State is confined to cases in which the cause of action arises here, and, nevertheless, maintain the jurisdiction so acquired in the instant case. For, whilst the relator's *right,* if he has any, to inspect the respondent's books may spring from the contract made in England, the *cause* of action disclosed in his petition consists of the refusal of the respondent's agent here to permit him to exercise that right.

Jurisdiction, however, when considered in connection with the exercise of judicial functions, "includes the power to compel a person to appear and answer a complaint or to punish him for not doing so; the power to take property in dispute into the custody of the law; the power to compel the production of evidence and hear the contention of parties; the power to determine the question of right between parties and to enforce the determinaton." Century Dict. *Verbo,* "Jurisdiction." And, where there is a lack of power in either of the directions mentioned, whether because intentionally withheld or because of the incapacity of the grantor to confer it, the jurisdiction may be said to be limited, in the one case, and incomplete or inadequate, in the other. Thus, the power to hear may be granted and the power to determine withheld, or the power to hear and determine may be granted and the power to enforce the determination withheld, or the power to hear, determine and enforce may be conferred, but restricted to particular litigants or subjects, and the jurisdiction may be properly exercised to the limit prescribed with the effect of fully accomplishing the purpose for which it is conferred. But where, from the terms of the grant, it is evidently the intention to confer jurisdiction without limit as to persons or subject-matter, or to confer complete jurisdiction, within certain limits, and the exercise of all the power intended to be conferred is necessary in order that the purposes of the grant may be accomplished, but it happens that the grant falls short, in an essential particular, by reason of want of power in the grantor, it follows that the jurisdiction, as conferred, is incomplete or inadequate, and the question arises whether, if, in a particular case, the purposes of the grant cannot thereby be accomplished, such jurisdiction should be exercised at all.

"It is a fundamental principle of the law of mandamus" (says Mr. High) "that the writ will never be granted in cases where, if issued, it would prove unavailing, and whenever it is apparent to the court that

the object sought is impossible of attainment, either through want of power on the part of the person against whom the extraordinary jurisdiction of the court is invoked, or for other sufficient causes, or that the granting of the writ must necessarily be fruitless, the court will refuse to interfere. So, if it is apparent that the writ, if granted, cannot be enforced by the court, relief will be withheld, since the courts are adverse to exercising their extraordinary jurisdiction in cases where their authority cannot be vindicated by the enforcement of process Nor will *mandamus* be allowed unless the act or duty whose enforcement is sought is legally possible at the time; and it is, therefore, a sufficient return to an alternative *mandamus* that the respondent has no power to do the act required." High on Extraordinary Legal Remedies, Sec. 14.

"A *mandamus* will not issue to compel a public officer to perform a ministerial duty when the evidence shows that the performance of that duty by him is a physical impossibility, or that his ability to carry out the mandates of the court depends upon the co-operative action of a third person who is not before the court." State *ex rel.* Lacasse vs. Cavanac, 30th Ann. 237.

"The service of the writ of *mandamus* must be upon the special officer or officers of the municipal corporation who are legally required to do the thing demanded." State *ex rel.* Kneeland vs. Shreveport, 29th Ann. 658; State *ex rel.* Bauman vs. Judge, 38th Ann. 431.

"Where a peremptory *mandamus* is directed against a corporation, punishment is to be inflicted on the officers of the corporation who, under the charter and by-laws, have power to perform the act commanded by the writ." Rnc. Pl. & Pr., Vol. 13, p. 813.

Hence it follows that whilst a court may have jurisdiction to hear and determine a cause against a corporation and to render judgment commanding it to perform a particular act, and may also have such power for the enforcement of its judgment, as its grantor can confer, nevertheless, if the corporation has its domicile in a foreign State or country and the particular officers to whom, alone, the necessary compulsion can be applied are beyond the reach of its process, the jurisdiction, as a whole, falls short; and, as the court will be powerless to enforce obedience, the judgment will not be rendered. This consideration, and a further consideration founded on public policy, we understand to be at the base of the well established jurisprudence to the effect that the courts of one State will not ordinarily exercise

visitorial power over corporations established under the laws of another State, and will not, as a rule, entertain suits having in view the regulation of the internal affairs of such corporations. Mr. Taylor says upon this subject: "As the courts of a State will enforce contracts at the suit of a foreign corporation, so they will entertain actions against it. But the subject-matter of the suit must not be such that the court will decline to assume jurisdiction, as, for instance, on account of its inability to do complete justice in the matter."

  \*   \*   \*   \*   \*   \*   \*

"Courts will not, however, determine matters relating to the internal management of foreign corporations arising between one set of shareholders and persons claiming to be the officers as well as shareholders of the corporation. But the legal relations between a corporation and its shareholders are to be determined by the law of the home State, and, accordingly, a State will recognize and apply a statute of a home State giving a corporation lien on its share for debts due to it from the shareholders." (Citing Wilkins vs. Thorne, 60 Md. 263; North State Copper, etc., Co. vs. Field, 64 Md. 151; Bishop vs. Globe Co., 135 Mass. 132.) Taylor on Private Corporations, 3rd Ed., 292. In another text book we find the doctrine and the reasons therefor stated as follows: "As a general rule, actions brought by stockholders, generally, in equity, to restrain or redress frauds or breaches of trust committed by the directors or officers of the corporation or by a majority of its stockholders in the management of its business and property, can only be brought in courts of the State under whose laws the corporation was created. This rule rests partly on jurisdictional grounds and partly on grounds of policy and expediency. It is indispensable in such an action that the corporation should be made a party in its corporate name and character. This reason alone, in many cases, drives the stockholder to the forum of the State of the corporation, because service of process cannot be had upon the corporation in other jurisdictions. It also rests upon the further consideration that in many cases by reason of the fact of the property of the corporation being situated out of the State it will be impossible for the court to effecuate its judgment, if it renders any. But it is obvious that many cases will arise where these reasons will not be controlling. Take, for instance, such a case as that stated in a preceding section, where a manufacturing corporation migrated with its entire business, corporate

books and personnel, from the State of its creation into another State and there did all its business and had all its corporate meetings."

"We accordingly find judicial opinions which more or less modify the general rule of jurisdiction above stated. One of them is to the effect that though such an action must, in general, be prosecuted in the State under whose laws the corporation has been created, yet injunctions and other auxiliary remedies may be had in the courts of other States." Moore vs. Swiss Valley Mining Co., 104 N. C. 354; Com. on Law of Corp., Thompson, Vol. 6, p. 8011.

The courts are not altogether agreed as to what acts of a corporation relate to its internal management, and in Maryland it has been held "That, where the act complained of affects the complainant solely in his capacity as a member of the corporation, whether it be as a stockholder, director, president or other officer, and is the act of the corporation, whether acting in stockholder's meeting or through its agent, the board of directors, that then such action is the management of the internal affairs of the corporation; and, in case of a foreign corporation, our courts will not take jurisdiction."

This is perhaps a correct statement of the minor premise and conclusion of a syllogism, in which, however, the major premise is neither established nor conceded, for, whether a court should exercise jurisdiction in a particular case against a foreign corporation, is, in our opinion, a question to be determined with reference rather to its power to enforce any decree that it may find it necessary to render, in order to do complete justice, than with reference to the possible effect of the suit upon the internal management of the corporation. If, as in the case referred to by Mr. Thompson, a corporation succeeds in migrating into another State than that of its creation and in carrying there its officers and property, and holds its corporate meetings and transacts its corporate business within the jurisdiction of the courts of such other State, so that any judgment rendered by such courts concerning such business can be completely enforced, we know of no reason why controversies as to the regulation of that business, whether arising among the members of the corporation or between them and third persons, should not be determined by these courts. Nor, if books showing the business done by a corporation in a State other than that of its domicile and origin are kept in such other State in the custody and under the control of the officer conducting such business, does any reason suggest itself why a shareholder, having the right to inspect

these books, should be driven out of the jurisdiction in which they are kept for the vindication of that right.

Applying these conclusions to the instant case, we are of opinion that under the contract whereby the relator became a shareholder in the respondent corporation the right is accorded him to inspect such books as the law of Louisiana requires foreign corporations, doing business here, to keep open for inspection; but, as the corporation has not complied with the law, and as neither the books nor the officers having the custody and control of them are within reach of the process of the courts of this State, he must seek the vindication of that right in some other jurisdicton.

We are further of opinion, however, that, as to the books, papers, letters received and copies of answers thereto kept and used in the transaction of the business of the respondent, and in the custody or under the control of its agent at Lake Charles, the relator has made out a case which entitles him to relief. It is true that it is admissible under our law for persons to submit to arbitration pending lawsuits or existing differences, but it is not admissible in England, where the contract from which the relator's right arises was made, nor do we think it would be admissible here for persons to stipulate, in advance, that in the event of differences arising in the future they will deny themselves the right to resort to the courts for their settlement. Mr. Justice STORY, in his "Commentaries on Equity Jurisprudence," Sec. 670, says upon this subject: "And where the stipulation, though not against the policy of the law, yet is an effort to divest the jurisdiction of the ordinary tribunals of justice, such as an agreement in case of dispute to refer the same to arbitration, a court of equity will not, any more than a court of law, interfere to enforce the agreement, but it will leave the parties to their own good pleasure in regard to such agreements. The regular administration of justice might be greatly impeded or interfered with by such stipulations if they were specifically enforced." This doctrine was approved by the Supreme Court of the United States in Home Insurance Co. vs. Morse, 20 Wall. 445, from the opinion in which case we excerpt the following:

"In Scott vs. Avery" (5 H. L. 811) "the Lord Chancellor says: 'There is no doubt of the general principle that parties cannot by contract oust the ordinary courts of their jurisdiction. That has been decided in many cases. Perhaps the first I need refer to was a case decided about a century ago.' (Kill vs. Hollister, 1 Wilson, 129.) That case

was an action on a policy of insurance in which there was a clause that in case of any loss or dispute it should be referred to arbitration. It was decided there that an action would lie, although there had been no reference to arbitration. Then, after the lapse of half a century, there occurred a case before Lord Kenyon, and from the language that fell from that learned judge, many other cases had probably been decided which are not reported. But in the time of Lord Kenyon occurred the case which is considered the leading case on the subject, of "Thompson vs. Charnock" (8 T. R. 139.) The case thus referred to related to an agreement, contained in a charter party, to arbitrate differences which might arise, and it was held that it should not be enforced. In the case before us, the evidence shows that the respondent Austin V. Eastman, manager, acted under instructions from his principal in refusing to allow the representative of the relator to inspect the books and papers in his possession relating to the respondent's business. The relator, therefore, had to choose between the alternatives, of submitting to arbitration or appealing to the courts, and he chose the latter alternative, as he had the right to do. Counsel for respondent suggest, in their brief, that the evidence, taken on the original hearing and contained in the transcript heretofore filed in this court, was not re-offered on the second hearing, and hence, that there is not sufficient evidence now before the court to authorize a decree in favor of the relator. We recognize the technical force of this suggestion, but we think that the case was tried, upon the second hearing, upon the theory that the evidence was in without being re-offered, and as we have it before us in the other transcript we do not think that the interests of justice require that the case should be again remanded in order that such evidence should be again offered.

It may be remarked that, if it appeared that it was in the power of the relator to specify the books, papers, etc., which are in the possession of the respondent's agent in this State, we should hesitate to make any order concerning them without such specification, but the relator, who is interested, to the extent of almost one-third, in the business and property of the respondent, has been denied access to the books showing how that business and property are being managed, and he has no means of ascertaining in what particular books, papers, or records, the respondent, through its agent, keeps that information, and, to require him, specially, to designate such books, etc., would be to require an impossibility and to concede the right of the respondent to deny him the information.

It may further be remarked that, if the inspection which the relator was enabled to make, after the institution of this proceeding, had been accorded by the respondent, it would have been tantamount to an admission that the suit was properly brought, and the relator would have been entitled to a judgment as by confession, and we think that he is none the less entitled to a judgment because the inspection was accorded by the receiver and he has been compelled to establish his right thereto over the opposition of the respondent, otherwise, the issue between the relator and the respondent would be left undetermined.

For these reasons, it is ordered, adjudged, and decreed, that the judgment appealed from be annulled, avoided and reversed, and that there now be judgment in favor of the relator, making peremptory the alternative writ of *mandamus* issued in this case in so far as to command the respondents, the North American Land and Timber Company, Limited, and Austin V. Eastman, its manager, to allow said relator to inspect such books, papers, letters, and copies of letters, relating to the business of said company, as may be in the possession, or under the control, of said manager, such inspection to be made within a reasonable time, and without impeding the business of the company, or subjecting its officers to unnecessary inconveniences. It is further ordered that the respondent corporation pay the costs in both courts.